In the Matter of the Application of TITLE GUARANTEE AND TRUST COMPANY, as Executor, etc., of EDWARD W. BROWNING, Deceased, for an Order to Discover Money and Property Withheld, Pursuant to Section 205 of the Surrogate's Court Act.*

ALEX P. WATTS and ALEX P. WATTS, INC., Appellants; TITLE GUARANTEE AND TRUST COMPANY, as Executor, etc., of EDWARD W. BROWNING, Deceased, Respondent.

(Consolidated Appeals.)

First Department, February 16, 1940.

*Benjamin Esberg* of counsel [*Max Chertok* with him on the brief; *Kantrowitz, Esberg & Solins*, attorneys], for the appellants.

*Joseph V. McKee* of counsel [*William T. Griffin* with him on the brief], for the respondent.

* Revg. 172 Misc. 1088.

TOWNLEY, J. The executor of the estate of the late Edward W. Browning petitioned the surrogate pursuant to section 205 of the Surrogate's Court Act for an order to discover money and property alleged to be held by the appellants. The petition indicated very clearly that discovery was sought not alone of the property of the deceased but also of the property claimed to belong to the Edbro Realty Company, Inc., a corporation, the stock of which was entirely owned by the decedent. Watts and his corporation thereupon moved to modify the discovery order so as to limit the proceedings to the affairs of the decedent and his executor and to exclude all reference to matters pertaining to the Edbro Realty Co., Inc., on the ground that as to such matters the surrogate was without jurisdiction of the subject-matter. This motion was denied by the surrogate and the appeal is before us.

By cross-motion the executors moved for leave to examine Alex P. Watts and Alex P. Watts, Inc., under the original discovery order on all matters alleged in paragraph Fifth of the executor's petition. The said paragraph Fifth reads as follows: " That in addition to the foregoing sums your petitioner believes that there may be other moneys and property that said Alex P. Watts paid or delivered or caused to be paid or delivered to himself or Alex P. Watts, Inc., from the funds or property now rightfully belonging to this estate and to your petitioner as executor thereof, or which the said Alex P. Watts may unlawfully have exacted or received for himself or said Alex P. Watts, Inc. as commissions from individuals, firms or corporations with which said Edbro Realty Co., Inc., did business in said period, or that said Alex P. Watts and Alex P. Watts, Inc. may have information concerning the illegal payment of moneys and property in the form or guise of commissions to persons other than Alex P. Watts or Alex P. Watts, Inc."

The surrogate granted this motion and an order was entered which directed Alex P. Watts, Inc., and Alex P. Watts to appear for examination and to produce all books and records relating in any way to the relationship between Watts and his corporation and to answer all questions referring to any dealings between Watts and Browning or Watts and Edbro Realty Co., Inc., or with third parties. No adequate reason is given in the papers for the examination of the relations between Watts and the Watts corporation. It seems clear that if either Watts or his corporation has money belonging to the estate, it can be recovered without an investigation of the arrangements existing between Watts and Watts, Inc. So much of the order of the examination is clearly without any material purpose.

As for the discovery attempted to be made by the executor of the relations between Edbro Realty Co., Inc., and Watts and Watts, Inc., we agree with the appellants that the Surrogate's Court is not the proper forum in which to bring proceedings to force an accounting by Watts and his corporation of their relations with the Edbro Realty Co., Inc.

The fact that all of the stock of the Edbro Realty Co., Inc., was owned by the deceased in his lifetime is no justification for administering the affairs of that corporation as if it were a part of the estate. In *Brock* v. *Poor* (216 N. Y. 387) the court considered the circumstances under which corporate existence might be disregarded. As a result of the decision, the rule is stated (at p. 388) as follows: " Unless a corporation has suffered such a complete dissolution that it must be regarded as no longer capable of holding or administering its property even for the purpose of corporate liquidation, and that it must be held that perforce of dissolution and loss of corporate existence and capacity its property and rights have passed to its stockholders as ultimate owners, the corporation is the proper party to assert the right to recover misappropriated corporate assets." During the course of his opinion Judge HISCOCK said that (p. 401) " the corporation in respect of corporate property and rights is entirely distinct from the stockholders who are the ultimate or equitable owners of its assets; that even complete ownership of capital stock does not operate to transfer the title to corporate property and that ownership of capital stock is by no means identical with or equivalent to ownership of corporate property."

The rights of corporate creditors must also be considered. Their rights cannot be prejudiced by any fiction which permits the assets of a corporation to be considered the property of its sole stockholder. They are entitled to have the property of the corporation remain with it and not have the enforcement of their claims involved in the administration of the personal estate of its stockholder.

A similar question was presented in *Matter of Auditore* (278 N. Y. 234). In that case attorneys had rendered services both to the estate and to various corporations, one-half of whose stock was owned by the deceased and one-half by his brother, who was his administrator. The services to the corporations were rendered chiefly in an action brought against the administrator to recover for waste of corporate assets. It was claimed that the attorneys had been overpaid for their services to the corporations. The Surrogate's Court, under the claimed authority of section 231-a of the Surrogate's Court Act, ordered repayment of the excess. The Court of Appeals in modifying this decree held that the excess

payments must be recovered by the corporation. The court in its opinion (at p. 242) said: " Though, as we have pointed out, the appellants in the control of the corporations owed a duty to both the corporations and the estate; though the services rendered to the corporations were connected with and arose out of their retainer by the administratrix; yet the corporations were the primary beneficiaries of the services rendered to them; the corporations were primarily liable for such services, and if there has been over-payment from the corporate funds, the corporations primarily are injured by such overpayments. A ' refund ' cannot be made to the estate of moneys which never belonged to the estate, and the moneys paid to or retained by the appellants for services to the corporations never belonged to the estate. * * * The ' refund ' of such alleged overpayment, if made to the estate, cannot inure to the benefit of the creditors of the corporations whose funds have been used for such overpayment, or to the trustee in bankruptcy who has the same interest in the corporations and the funds of the corporations as the estate." The only attempt to distinguish this decision from the case before us is based upon the fact that in the *Auditore* case the estate owned only one-half of the stock. That fact for the reasons previously stated does not change the rule established by this decision.

The order denying a motion to modify the discovery order should be reversed, with ten dollars costs and disbursements, and the motion granted as prayed for in the order to show cause.

The order granting an examination should be reversed, with ten dollars costs and disbursements, and the motion denied.

MARTIN, P. J., O'MALLEY, UNTERMYER and DORE, JJ., concur.

In the first proceeding: Order entered December 9, 1939, denying motion to modify a discovery order unanimously reversed, with ten dollars costs and disbursements, and motion granted as prayed for in the order to show cause. Settle order on notice.

In the second proceeding: Order entered December 1, 1939, granting motion of Title Guarantee and Trust Company for examination before trial of Alex P. Watts and Alex P. Watts, Inc., unanimously reversed, with ten dollars costs and disbursements, and motion denied.