BANK OF NEW YORK, as Trustee under the Will of ARTHUR M. MITCHELL, Deceased, Plaintiff, *v.* JOHN A. KENNEDY, Defendant.

Supreme Court, Special Term, New York County, October 19, 1944.

**820**

*William A. Kirk* for plaintiff.

*William B. O'Connor* for defendant.

PECK, J. This is a motion by plaintiff for summary judgment in an action on a bond.

The pertinent facts are: On February 3, 1930, the defendant Kennedy duly executed and delivered to Century Stearic Acid Candle Works, a corporation then in dissolution, his bond in the sum of $100,000, with interest at $5\frac{1}{2}\%$, and secured by a purchase-money mortgage in the same amount covering premises 380 South Street, Manhattan. Century immediately assigned the bond and mortgage to plaintiff's assignor.

On that date, Kennedy also conveyed the realty underlying the mortgage to his wholly owned J. A. Kennedy Realty Corporation. Subsequently, at Kennedy's written request, the interest on the bond and mortgage was reduced by plaintiff from $5\frac{1}{2}\%$ to 3%.

On April 13, 1939, the mortgaged premises were taken by the City of New York in condemnation proceedings. Kennedy appeared and participated both individually and through the Kennedy Corporation in the trial held to determine the value of the property. The final decree awarded to plaintiff, as mortgagee of the premises, the sum of $61,124, from which were deducted tax liens of $725. The defendant Kennedy individually and the Kennedy Corporation appealed from the decree to the Appellate Division and the Court of Appeals, complaining as to the adequacy of the award. Those courts have unanimously affirmed the decree (*Matter of City of New York* [*East River*

*Drive*], 264 App. Div. 758, affd. 289 N. Y. 766). A balance of $39,700 then remained due on the bond, and plaintiff seeks in this action to recover that amount, plus interest at 3% per annum from the date of taking by the City.

The sufficiency of the complaint herein was unsuccessfully challenged at Special Term. Thereupon, the defendant interposed an answer consisting of several denials, six complete defenses and one partial defense.

Kennedy's denials are clearly shown as sham and frivolous by the documentary evidence marshalled by the plaintiff. And an analysis of Kennedy's opposing papers makes it apparent that they raise no genuine triable issue, thus entitling plaintiff to summary relief.

The first defense alleges that the Kennedy Corporation executed on its part some proposed agreement with the holder of the bond and mortgage, increasing the rate of interest from 3% to 6%, and since Kennedy never agreed to pay interest at 6%, he is allegedly relieved of his obligation to pay the bond. Kennedy, however, merely asserts a unilateral execution of a proposed agreement; there is a fatal failure to allege the acceptance of this agreement, or its delivery, or that it ever became effective. Indeed, there is no showing that the Kennedy Corporation even communicated its assent to plaintiff. This defense is therefore insufficient in law.

The second defense sets forth that plaintiff's acceptance of the award in condemnation proceedings constituted an election, and hence plaintiff may not proceed on the bond. The court is not aware of any authority in law for this defense. Plaintiff was under no obligation to make any election, and in point of fact made no election in accepting the award. The award in the condemnation proceedings only served to take the place of the land and its incidents, thus extinguishing the mortgage lien (*Utter* v. *Richmond,* 112 N. Y. 610; *Hendry* v. *Title Guarantee and Trust Company,* 165 Misc. 349, 353, affd. 255 App. Div. 497, affd. 280 N. Y. 740; *Matter of City of New York* [*Houghton Ave.*] 266 N. Y. 26). Nevertheless, the indebtedness on the bond continued, and this suit is predicated on that indebtedness.

The third defense, alleging that the property had a value of $125,000, is insufficient as matter of law. The court in the condemnation proceeding — at which trial Kennedy appeared and testified — fixed the value of the mortgaged premises at $61,124. As noted, Kennedy and the Kennedy Corporation unsuccessfully appealed from the final decree through the Court of Appeals. Accordingly, the value of the mortgaged premises as of April 3, 1939, is *res judicata.*

The fourth defense, namely, that the obligation referred to in the complaint fell due January 15, 1935, and that the holder of the mortgage did not enforce its remedy by foreclosure, is similarly insufficient as matter of law. Between January 15, 1935, and April 13, 1939, the moratorium law (Civ. Prac. Act, art. 65) was in full force and effect, and plaintiff was thereby precluded from pursuing that remedy against the defendant or the mortgaged premises. It is not apparent that plaintiff's failure to foreclose the mortgage would be a defense anyway.

The fifth defense, asserting that the deed from Century to Kennedy was defective because Century was in dissolution, is untenable. Undeniably, after voluntary dissolution a corporation's board of directors are trustees of its assets, and the corporate life is continued to permit the necessary winding up of affairs. (*Asphalt P. & C. Co.* v. *City of New York No. 2*, 149 App. Div. 622, 630, 631; *Metropolitan Tel. & Tel. Co.* v. *Met. Tel. & Tel. Co.*, 156 App. Div. 577; *Tanzer* v. *Banker's Land & Mortgage Corporation*, 159 App. Div. 351.) Here, the deed was executed in accordance with subdivision 8 of section 105 of the Stock Corporation Law then in effect. Moreover, the validity of the deed is plainly evidenced by Kennedy's actions: Kennedy caused the title to be examined and insured by Title Guarantee & Trust Company; Kennedy then transferred the deed to the Kennedy Corporation, warranting his title; the Kennedy Corporation enjoyed the rents and profits of these premises from February, 1930, to April, 1939, the time of taking by the City; the Kennedy Corporation proved its title at the condemnation trial.

The sixth defense, to the effect that plaintiff is precluded from bringing this action by the moratorium law, will not defeat plaintiff's claim. On April 13, 1939, when the City condemned the mortgaged premises, the bond ceased to be secured solely by a mortgage. (*Utter* v. *Richmond,* 112 N. Y. 610, *supra*; *Matter of City of New York* [*Houghton Ave.*], 266 N. Y. 26, *supra; Hendry* v. *Title Guarantee and Trust Co.,* 165 Misc. 349, *supra.*) Consequently, the claim does not fall within article 65 of the Civil Practice Act. (See, also, *Johnson* v. *Meyer,* 242 App. Div. 798, affd. 268 N. Y. 701; *Weisel* v. *Hagdahl Realty Co., Inc.,* 241 App. Div. 314; *Danzig* v. *Gold,* 246 App. Div. 671.)

" The emergency legislation was intended to prevent unconscionable gains by mortgagees through acquiring both the property and a large deficiency judgment to be satisfied from other property of the luckless mortgagors. As we view it, it was not intended to destroy and wipe out all obligations where the

mortgagee had suffered a loss of security which had turned out to be inadequate, and leave him entirely remediless with no possible payment from the security and with no right to recover a judgment for the money loaned.'' (*Weisel* v. *Hagdahl Realty Co., Inc., supra*, p. 319.) Plainly, the right of action on the bond survived the condemnation proceeding and is not affected by the moratorium law.

The partial defense, contending that defendant was entitled to the interest awarded by the condemnation decree, finds no substance in the law. The award became plaintiff's property on April 13, 1939, the date of the vesting of title, and plaintiff was therefore entitled to any interest paid by the City. (*Matter of City of New York* [*E. 29th St.*], 273 N. Y. 62, 66.)

Plaintiff's motion for summary judgment is accordingly granted. Settle order, providing for a ten-day stay of execution.